IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, WILLIAM WINKLER, MELANIE MONTGOMERY, AND JESSE GREENBERG,<br>    *Movants*,<br><br>v.<br><br>NATIONAL RIFLE ASSOCIATION OF AMERICA and WAYNE LAPIERRE,<br>    *Respondents*. | §§§§§§§§§§§§§    Miscellaneous Case No. _____ |

## MOTION TO QUASH THIRD PARTY SUBPOENA

Movants Ackerman McQueen, Inc., Mercury Group, Inc., Henry Martin, William Winkler, Melanie Montgomery, and Jesse Greenberg (collectively, "***Movants***") file this *Motion to Quash Third-Party Subpoena on American Clean Skies Foundation* ("***Clean Skies***"), attached as **Exhibit A** hereto, and in support thereof respectfully show as follows:

### I. SUMMARY

This instant action arises out of a multi-district dispute between the National Rifle Association ("***Respondent***" or "***NRA***") and its longtime public-relations firm, Ackerman McQueen ("***AMc***"). As part of its scatter-shot discovery strategy, the NRA has served numerous third-party subpoenas to current and former clients of AMc around the country, including American Clean Skies Foundation—a party which has not been a client of AMc in twelve years. The third-party subpoena at issue in this Motion is harassing and seeks information wholly irrelevant to the claims and defenses in the lawsuit. Because the Eastern District of Virginia is the court of compliance for this subpoena, Movants respectfully request this Court quash the subpoena and prohibit the NRA and its counsel (Bill Brewer) from pursuing these abusive discovery tactics.

## II.     BACKGROUND

**A.     Litigation History**

1. On August 30, 2019, the NRA sued AMc, Mercury Group, Martin, and Greenberg in Texas federal court,[1] while maintaining three additional cases against AMc in Virginia for the same claims.[2] After Movants filed a motion to dismiss, the NRA filed its First Amended Complaint on October 25, 2019 (Doc. 18), adding new individual defendants (current and former AMc employees). Movants then filed a new motion to dismiss (Doc. 28) on November 15, 2019. That motion is currently pending. Movants also filed their Amended Answer, Amended Counterclaim, and Third-Party Complaint (Doc. 31) on November 15, 2019.

2. The NRA's First Amended Complaint asserts the following causes of action:

   a. Claims for false association under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (*see* Doc. 18 at 40);

   b. Copyright infringement under 17 U.S.C. § 101 *et seq.* (*see* Doc. 18 at 42);

   c. Conversion (*see* Doc. 18 at 43);

   d. Fraud (*see* Doc. 18 at 45);

   e. Breaches of fiduciary duties (*see* Doc. 18 at 52);

   f. Conspiracy (*see* Doc. 18 at 55);

   g. Breach of fiduciary duty of loyalty (*see* Doc. 18 at 56); and

   h. Breach of contract (*see* Doc. 18 at 58).

3. In response, AMc asserted a counterclaim and third-party complaint for:

   a. Libel per se (the NRA falsely accuses AMc of extortion) (see Doc. 31 at 111);

---

[1] *NRA v. Ackerman McQueen, Inc., et al*, Case No. 3:19-cv-02074-G, in the United States District Court for the Northern District of Texas, Dallas Division.
[2] The NRA also amended its complaint in Virginia on February 6, 2020 to allege additional claims it already brought in the Texas action back in October 2019.

      b.    Tortious interference with contract (regarding AMc employment agreements) (see Doc. 31 at 112);

      c.    Declaratory judgment (the NRA waived the confidentiality provision of the Services Agreement between the NRA and Ackerman McQueen) (see Doc. 31 at 112);

      d.    Fraud (relating to NRATV and compensation of talent hired to promote the NRA) (see Doc. 31 at 113); and

      e.    Breach of contract (regarding the NRA's failure to pay AMc's invoices, failure to indemnify and reimburse AMc for expenses arising from government inquiries, failure to obtain a $3 million letter of credit securing AMc's invoices, and failure to pay a termination fee upon termination of the Services Agreement) (see Doc. 31 at 113-122).

**B.**    **The NRA's Abusive Discovery Tactics**

4.    To further understand the extent of the artifice and harassment by this subpoena, it is necessary to consider the litigation history and discovery status: the NRA sued AMc in Virginia in April 2019 for alleged failure to comply with audit requests and not turning over certain information, including a contract with Lt. Col. Oliver North ("***Col. North***").

5.    The NRA sued AMc again in Virginia in May 2019 for breach of fiduciary duty and breach of the Services Agreement against (confidentiality), relating to allegations of "leaks" and a false extortion narrative. The NRA then sued AMc in Texas federal court in September 2019 for intellectual property claims, breach of contract *yet again* (for failure to comply with audit request and to turn over certain information, including the Col. North contract), and fraud.

6.    And the NRA filed a fourth lawsuit against AMc for a third time in Virginia in September 2019 for return of property, which AMc has not opposed but also for which the NRA must first pay AMc to cover the expense of the return. The NRA has incorporated in the Texas action the claims in the three Virginia lawsuits. Those three Virginia cases have been consolidated into one.

7.  To date, the NRA has propounded more than 400 discovery requests in the Texas lawsuit alone. Those discovery requests replicate the discovery in the Virginia lawsuits. Then, on January 29, 2020, the NRA served an *additional* 140 document requests in the Virginia lawsuit, which requests are almost identical to the ones already issued in Texas. And just on February 3, 2020, the NRA served *the exact same* requests in Texas (an additional 108). The NRA did not even bother to change the requests to refer to the correct request numbers (*e.g.*, Virginia Request No. 61 refers to Request No. 60, and Texas Request No. 89 refer to Request No. 60 when it should refer to Request No. 88). In total, the NRA has served upon Movants more than 600 discovery requests.

8.  More abusively, the NRA issued more than 20 subpoenas to various third parties, including AMc's current and former clients (ten on January 8, 2020 and eleven on January 24, 2020). One subpoena even asks a vendor for AMc's *access credentials* so that the NRA can gain access to AMc's account.

9.  The NRA served its subpoena Clean Skies on January 24, 2020.[3] The subpoena contains enumerated requests for different broad categories of documents and information related to its billing practices and "Digital Media" services performed by AMc without limitation as to time period. *See* Exhibit A.

10. However, even if Clean Skies were to comply with these invasive requests, any resulting document production would yield no relevant documents to support the NRA's allegations. As explained herein, Clean Skies was a client so long ago that the technologies and production methods used for these clients bear little relationship to those used for the NRA.

---

[3] The NRA also served document subpoenas on additional third-parties located in other states on the same day, including subpoenas to Six Flags Entertainment Corporation (Texas), Remington Firearms (North Carolina), and eight entities in Oklahoma. Movants have filed additional motions to quash in the Western District of Texas and the Western District of Oklahoma.

Moreover, the size and scope of the NRA and its platform, NRATV, were so much broader and more complex that any comparison other clients would simply not lead to the discovery of any admissible evidence. Most importantly, the subpoena seeks documents that date back the entire length of the business relationship, which *ended* twelve years ago. The subpoena is nothing but a fishing expedition to retroactively justify a previous bad-faith allegation with no basis in law or fact.

### III. ARGUMENTS & AUTHORITIES

11. Under Federal Rule of Civil Procedure 45, a Court must quash or modify a subpoena that subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv). The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information. FED. R. CIV. P. 45(d)(3)(B).

12. Moreover, subpoenas to a non-party do not grant the requesting party any broader right to information than allowed by the Federal Rules of Civil Procedure for discovery between the parties. "The scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Va. Dep't of Corr. v. Jordan*, No. CV 3:17MC02, 2017 U.S. Dist. LEXIS 183014, at *11 (E.D. Va. Nov. 3, 2017). Accordingly, a subpoena must be relevant to a party's claim or defense and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(1).

13. Under Rule "45(d)(1) requires that a party seeking discovery through the use of a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subjected to the subpoena." *Jordan*, 2107 U.S. Dist. LEXIS 183014, at *11. A subpoena that seeks evidence "that is neither relevant or that is so overbroad that compliance with its demands will necessarily require production of irrelevant evidence seeks evidence outside the scope of Rule 26(b)(1)," which "necessarily" creates an undue burden. *Id.* at *11-12.

14. Rule 45 requires the Court to quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A). The Court may also quash or modify a subpoena that requires disclosure of a trade secret or other confidential research, development, or commercial information. FED. R. CIV. P. 45(d)(3)(B).

**A.     The subpoena is overbroad and seek irrelevant, confidential information.**

15.     The January 24, 2020 Clean Skies subpoena commands production of documents by 10:00 a.m., February 10, 2020.

16.     The Eastern District of Virginia recognizes "that the relevance constraints of Rule 26(b) serve as constraints on all other discovery mechanisms, including Rule 45, such that parties have standing to challenge any discovery request that imposes an undue burden by seeking information beyond the scope of relevance set by Rule 26." *In re ThompsonMcMullan, P.C.*, No. 3:16-MC-1, 2016 U.S. Dist. LEXIS 35172, at *13 (E.D. Va. Mar. 17, 2016). "A party may seek to quash or modify a subpoena on grounds of irrelevance or overbreadth" because they "necessarily establish[] undue burden." *Id.* at *13-14. Therefore, a court may quash a subpoena for overbreadth when the requested documents are not limited "to those containing subject matter relevant to the underlying action," and may further "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense by forbidding the disclosure or discovery of the material at issue." *Id.* at *14 ("[A] subpoena imposes an undue burden on a party when it is overbroad."). In fact, according to this district:

> Rule 45(c)(3) **requires** a court to quash subpoenas that subject a person to 'undue burden,' and **because 'undue burden' is necessarily established where a party proves irrelevance or overbreadth because of the scope limitations of Rule 26, Rule 45(c)(3) requires the court to quash subpoenas which seek irrelevant information or are overbroad**.

*Id.* at *15-16 (emphasis added).

17. Here, the Clean Skies subpoena is both overbroad and seeks irrelevant information. The subpoena requests various "documents and records" defined to "mean all writings of any sort" and states that "each term should be construed in its broadest sense." The definition further includes, without limitation, a description of every imaginable type of document and any electronically recorded data that "can be obtained or translated through detection devices or other means into any reasonably useable or recordable format." *See* Exhibit A.

18. The NRA's definition of "refer or relate to" is similarly overbroad, including anything that might be "factually, legally or logically connected to the subject matter of the particular Request." *Id.* Additionally, the NRA's definition of "You" or "Your" is overly broad in that it includes not only Clean Skies but also "all present and former agents, employees, representatives, advisors, officers, task force officers, attorneys, consultants, investigators, individuals, and entities acting on behalf of, or pursuant to, the direction" of Clean Skies. *Id.*

19. Most importantly, the subpoena provides no limitation as to the time period for responsive documents and thus encompass the entire history of Clean Skies' business relationships with AMc. However, Respondent has already represented that the relevant time period of the facts surrounding this lawsuit begin on January 1, 2015. *See* Exhibit B at 8 (Pl.'s Request for Prod.).[4] Although Movants maintain that the relevant period begins more recently, for purposes of this Motion, January 1, 2015 at least represents the outer bounds of potential relevance. Accordingly, any Subpoena that purports to seek documents from a date prior to January 1, 2015 is facially irrelevant as to any pre-2015 documents.

**B.    The subpoena subjects Clean Skies to undue burden.**

---

[4] Only the definitions and instructions section has been included with this filing for ease of reference.

20. To avoid undue burden, a third-party subpoena "must be narrowly crafted to relevant subject matter in the underlying litigation." *Jordan*, 2017 U.S. Dist. LEXIS 183014, at *12. The following factors are relevant when considering whether the subpoena imposes an undue burden:

> Non-party status is one of the factors the court uses in weighing the burden of imposing discovery. An undue burden is identified by looking at factors such as relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed.

*Id.*

21. The relevance of a subpoena seeking discovery is measured by the standard articulated in Rule 26(b)(1), which limits the scope of discovery to:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). The subpoena must, therefore, be limited to documents that are relevant to any party's claim or defense rather than to develop new, unpleaded claims or defenses. In addition to limiting discovery to relevant information, Rule 26 specifies that the discovery must be proportional to the needs of the case. FED. R. CIV. P. 26(b)(1).

22. As set forth above, the documents requested in this subpoena have only tenuous relevance to the NRA's claims for fraud. In light of the unrestricted time frame, it becomes evident the subpoena is only be intended to seek documents that might develop new claims or defenses and that circumvent another court's protective order. Likewise, seeking decades of information from Clean Skies is simply not proportional to the needs of the case and will impose unnecessary

and unfair financial burdens upon these non-parties. The subpoena is, therefore, impermissible and necessarily unduly burdensome.

23. Relatedly, the subpoena is facially overbroad and unduly burdensome because AMc's services to Clean Skies ended more than 10 years ago, in 2008. There is no reasonable basis for seeking documents that pre-date—by at least eight years—the NRA's own focus on NRATV in 2016. Moreover, Clean Skies had a different target audience in a different industry with different purposes than for NRATV, such that any documents that could be identified from more than 12 years ago would be unrelated to the claims and defenses in this lawsuit. The subpoena should be quashed.

24. Moreover, the litigants and attorneys in this case present a unique, albeit soap-opera-like, twist that militates in favor of quashing the subpoena. The NRA's lead lawyer is not simply disinterested advocates for the NRA in this matter. He is the son-in-law of the late Angus McQueen, AMc's former owner and CEO, and the brother-in-law of AMc's current CEO, Revan McQueen. His animus-infused history with the McQueen family is well-known and itself insinuates his true reason for representing the NRA against his own family. Through the issuance of the subpoena, the NRA seeks unrestricted access to decades of information about AMc's confidential business practices, including budgets, billing information, staffing, operations, and client communications, which would circumvent a protective order walling-off one of the NRA's lawyers from AMc's highly confidential information in the Virginia cases. The dubious motives behind this overbroad subpoena create the very undue burden the law prohibits.

**C.    Exceptional circumstances warrant transferring this Motion to the Northern District of Texas.**

25. According to Federal Rule of Civil Procedure 45(f), the compliance court can transfer the Motion to the issuing court based on exceptional circumstances. Here, exceptional

circumstances exist based on the facts described herein, including the more than 600 discovery requests at issue, the more than 20 subpoenas served, and the various pending motions to quash, including a motion to quash before the issuing court (the Northern District of Texas). Another exceptional circumstance is the dispute over the protective order and the risk that a third party's compliance with said subpoenas would circumvent the protective order. These discovery issues are likely to arise (and have arisen) in several districts and will be addressed by the Northern District of Texas, such that judicial economy supports transferring the Motion to promote uniformity.

## IV. CONCLUSION

For the foregoing reasons, Movants respectfully request this Court grant their Motion; quash the subpoena issued to Clean Skies; transfer the Motion to the Northern District of Texas; and grant Movants any further relief, at law or in equity, to which they may be justly entitled.

Dated: February 7, 2020

        Respectfully submitted,

        /s/ *Stuart Sears*
        Stuart A. Sears (VSB No. 71436)
        SCHERLTER & ONORATO, LLP
        901 New York Avenue, NW
        Suite 500
        Washington, D.C. 20001
        Ph: 202-628-4199/Fax: 202-628-4177
        ssears@schertlerlaw.com

        **ATTORNEY FOR MOVANTS ACKERMAN MCQUEEN, INC., MERCURY GROUP, INC., HENRY MARTIN, JESSE GREENBERG, WILLIAM WINKLER, AND MELANIE MONTGOMERY**

## CERTIFICATE OF CONFERENCE

On February 7, 2020, counsel for AMc, Dorsey & Whitney, conferred with counsel for the NRA regarding the Motion. Counsel for the NRA was opposed to the relief sought and was not willing to withdraw the subpoenas.

/s/ *Stuart Sears*
Stuart A. Sears

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2020, I filed the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Virginia. I hereby certify that I am affecting service of the document on counsel for the NRA the issuing court in the Northern District of Texas, Dallas Division.

/s/ *Stuart Sears*
Stuart A. Sears